IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> CARLOS BEZA-GARI, <br><br> Defendant. | CRIM NO. 09-334-3 (RAM) |

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Carlos Beza-Gari ("Defendant" or "Beza")'s *Motion to Reduce 262-Month Drug-Importation Sentence* ("*Motion*") (Docket No. 168). The United States of America (the "Government") opposes the *Motion*. (Docket No. 180). For the reasons set forth below, the *Motion* is **DENIED**.

I.    PROCEDURAL BACKGROUND

On October 7, 2009, a Grand Jury returned a seven-count indictment charging Beza and his codefendants (collectively, "Defendants"). (Docket No. 15). Defendants were accused of conspiring to possess with intent to distribute heroin and cocaine, possession with intent to distribute heroin and cocaine, conspiring to import heroin and cocaine, and importing heroin and

cocaine. Id. at 1-6. All these charges stemmed from a drug importation attempt into Puerto Rico in September 2009. Id.

On September 20, 2010, Beza reached a plea agreement with the United States. (Docket Nos. 92, 93, 94). Therein, he pled guilty to the charge of knowingly importing heroin into Puerto Rico, yielding an adjusted offense level of 34 under the Sentencing Guidelines. (Docket No. 93 at 3). The potential guideline range at the time was 262 to 327 months if "the Court [found] him to be a career offender." Id. The parties agreed that the applicable guideline range would be 188 to 235 months if the Court did not do so and concurred in recommending an 188-month sentence in this scenario. Id.

On January 14, 2011, the Court deemed Beza a career offender and sentenced him to 262 months of imprisonment. (Docket Nos. 104, 116). The Court concluded that "the sentencing commission and Congress has provided that if a defendant is 18 years or older at the time they commit the offense and he has two prior convictions for either drug cases or offenses that were committed through the means of violence . . . he is a career offender." (Docket No. 116 at 12). Beza appealed his sentence to the First Circuit, which concluded that there was no basis for appeal and summarily affirmed the Court's judgment. (Docket No. 120).

Beza has repeatedly attempted to reduce the length of his sentence since then. On October 29, 2015, Beza filed a *Motion to Reduce Sentence* based on amendments to the Sentencing Guidelines, (Docket Nos. 135, 168 at 8), but was denied since he was a career offender. (Docket Nos. 136 at 3). Once more, Beza appealed his sentence to the First Circuit, which concluded that "when an amendment lowers the drug quantity table, but does not lower the career offender guideline, § 4B1.1, a defendant sentenced as a career offender is not eligible for" relief and affirmed the Court's denial. (Docket No. 146). Similarly, on June 21, 2016, Beza filed a *Motion to Reduce Sentence* pursuant to a new Supreme Court case. (Docket No. 145). The Court denied that, too, ruling that Beza "does not qualifies [sic] for the remedy requested." (Docket No. 148).

On August 13, 2025, Beza filed the instant *Motion*. (Docket No. 168). Therein, he contends that he would not be considered a career offender today. Id. His argument rests in large part on the 2023 amendments to § 1B1.13 of the Sentencing Guidelines, which permit courts to deem sentences "unusually long" if a change in law creates a gross disparity between the sentence being served and the one likely to be imposed today. Id. at 9-10. Beza argues that all three of his prior Commonwealth court convictions--(a) aggravated burglary, (b) attempted robbery, and (c) controlled

Criminal No. 09-334-3(RAM)                                              4

substance possession--no longer constitute career offender predicates. Id. at 12-18. Therefore, Beza avers that his contemporary guideline range would be just 151 to 188 months, well short of the 262 months he currently serves. Id. at 12, 18. Beza adds that he has already served almost sixteen years, that his codefendants received lower sentences, that the median sentence for heroin trafficking is far lower nowadays, and that his rehabilitation efforts, medical circumstances, and proposed reentry plan militate in favor of reduction. Id. at 3-6, 8, 21-23.

On October 31, 2025, the Government filed its *Response*. (Docket No. 180). Therein, the Government argues that since the amendments altering courts' treatment of predicate offenses do not have "retroactive" effect, they cannot create "extraordinary and compelling" circumstances. Id. at 3-10. The Government cites several out-of-circuit authorities for the proposition that the USSC exceeded its statutory authority by adopting the relevant guideline amendments. Id. While acknowledging a First Circuit decision that accepts that "changes in law can qualify as extraordinary and compelling reasons," the Government insists that "four [other] Circuits, agreeing with the government," have the more correct understanding. Id. at 9; *see* United States v. Ruvalcaba, 26 F.4th 14, 25 (1st Cir. 2022) ("[n]or do we see any

textual basis in the FSA for a categorical prohibition anent non-retroactive changes in sentencing law"). According to the Government, these Circuits have held that non-retroactive changes to sentencing law do not create an extraordinary basis for sentence reduction. (Docket No. 180 at 8-9).

Independently, the Government contends that the contemporary guideline range of 151 to 188 months for Beza's crime is not "unusually long" or a "*gross* disparity" relative to the imposed sentence. Id. at 11-12 (emphasis in original). The United States argues that Beza's rehabilitation is not out of the ordinary or complete, that his re-entry plan is typical of a defendant preparing for supervised release, and that Section 3553(a) factors weigh against releasing him because of his extensive criminal history and his disciplinary record in prison. Id. at 12-16. For the last proposition, the Government points to a physical altercation Beza had with another inmate in August 2024 and Beza's occasional refusal to work and participate in substance use screenings. Id. at 14-16; (Docket No. 180-1). This includes violations as recent as three instances of refusing to work from the two months preceding Beza's *Motion*. Id.

On November 14, 2025, Beza filed a *Reply* to the Government's *Response*. (Docket No. 185). In it, Beza argues that pursuant to subsequent minor role-related amendments to the Sentencing

Guidelines, his applicable minimum sentence has fallen further and now stands at just 110 months. Id. at 1-2. Beza avers that the gap between his 262-month sentence and the sentence that he would likely receive today is "gross"; that the Court can properly consider his alleged declassification as a career offender; and that his individualized circumstances, rehabilitation, maintenance of sobriety, release plan, and availability of supervised release all militate in favor of reducing his sentence to time served. Id. at 3-10.

Beza attempts to justify the repeated infractions in his Federal Bureau of Prisons ("BOP") administrative record. Id. at 9-10. He denies failing to comply with a drug/alcohol test. Id. at 10. Beza asserts that his illicit use of a medication came while he was on a waitlist to begin that medication's authorized use. Id. He suggests that all instances in which he was sanctioned for refusing to work stemmed from his fear of being attacked by other prisoners for cooperating with the authorities. Id. Likewise, he alleges that his only disciplinary violation involving physical violence came when he was attacked by another prisoner. Id.

On December 11, 2025, Beza filed a *Notice of Supplemental Authority*, in which he called the Court's attention to an out-of-circuit Eastern District of Virginia case wherein the court ordered the release of a similarly situated defendant. (Docket No. 188).

On May 28, 2026, shortly before this Court resolved the *Motion*, the Supreme Court of the United States issued its opinion in <u>Rutherford v. United States</u>. 2026 WL 1485535, at \*3-11 (U.S. May 28, 2026). As a result, none of the parties' filings address that intervening decision and the Court proceeds to consider its holdings *sua sponte* below.

## II.  APPLICABLE LAW

### A. <u>The compassionate release regime</u>

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a court may not modify a final sentence until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." <u>Id.</u> Once these conditions are met, the district court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," and find that there are "extraordinary and compelling reasons" warranting the requested reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* <u>United</u>

States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions).

The United States Sentencing Commission's ("USSC") policy statement on prisoner-initiated motions for compassionate release provides further direction. *See* U.S.S.G. § 1B1.13. Pursuant to First Circuit precedent, "district courts addressing such motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that [policy statement's] guidance." United States v. Ruvalcaba, 26 F.4th 14, 23-24 (1st Cir. 2022). In other words, the First Circuit expects district courts "to take heed of" the new policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023).

On November 1, 2023, the USSC's policy statement on motions for compassionate release initiated by prisoners took effect. *See* U.S.S.G. § 1B1.13. Accordingly, the "window" in which Ruvalcaba granted district courts broad discretion has "clos[ed]." *See* United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023) (noting the gap in guidance on prisoner-initiated motions and the then-upcoming amendments to U.S.S.G. § 1B1.13).

The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and

compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5) "other reasons" similar in gravity to the preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b).

Moreover, the court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors relevant to dangerousness consist of the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the Section 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

## B. Rutherford v. United States and its modifications to the compassionate release regime

On May 28, 2026, the Supreme Court of the United States issued its opinion in Rutherford v. United States. 2026 WL 1485535, at

*3-11 (U.S. May 28, 2026). While recognizing that the First Circuit had permitted its District Courts to allow non-retroactive sentencing changes to satisfy the "extraordinary and compelling" standard for sentence reductions, *see* Ruvalcaba, 26 F.4th 14, the Supreme Court overruled that rule. Rutherford, 2026 WL 1485535, at *5 n.2.

The Supreme Court held that the Sentencing Commission had overstepped its statutory authority by adopting a definition of "extraordinary and compelling" inconsistent with its governing statute. Id. at *10. Hence, it held that "[t]he statutory text and structure make clear that Congress's nonretroactive change to [a sentencing law]—considered by itself or in combination with other factors—cannot make a prisoner eligible for compassionate release." Id. Put differently, the Supreme Court concluded that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." Id. at *6 (citing 18 U. S. C. § 3582(c)(1)(A)(i)) (citation modified).

### III. ANALYSIS

A. **Rutherford forecloses Beza's "extraordinary and compelling" reason**

In Ruvalcaba, the First Circuit formerly found that Congress never "expressly prohibited district courts from considering non-

retroactive changes in sentencing law." 26 F.4th 14, 25. Thus, when Ruvalcaba was still the law of the land in this Circuit, this Court possessed the discretion to conduct "an **individualized review of a defendant's circumstances and [effectuate] a sentence reduction . . . based on any combination of factors (including unanticipated post-sentencing developments in the law)**." Id. at 26 (citations omitted) (emphasis added).

However, Ruvalcaba is no longer law. Instead, the Supreme Court's Opinion in Rutherford controls the threshold issue in the case at bar. Beza's *Motion* relies in large part on the alleged disparity between the sentence he serves and the term he would serve if sentenced today. However, that disparity results from admittedly non-retroactive sentencing law developments concerning career offender status and predicate offenses. Under Rutherford, such nonretroactive changes plainly cannot establish "extraordinary and compelling" justifications for compassionate release. 2026 WL 1485535, at *10. Paraphrasing the Supreme Court words earlier today, since Congress had "decline[d]" to make the sentencing amendment Beza bases his *Motion* on retroactive, the fact that his "preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." Id. at *6 (citation modified). The Supreme Court today foreclosed Beza's argument.

**B. <u>Independently, Section 3142(g) and Section 3553(a) weigh against reducing Beza's sentence</u>**

Even if the Court had found extraordinary and compelling circumstances, a sentence reduction would be appropriate only if the factors set forth in 18 U.S.C. § 3553(a) independently favored release. Moreover, the same applies to the necessary showing that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors relevant to dangerousness consist of the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

Beza bears the burden of establishing that he is not a danger to the community and that the Section 3553(a) factors favor his release. *See, e.g.*, <u>Galiany-Cruz</u>, 2023 WL 6458535, at *1; <u>Miranda-Rojas</u>, 2023 WL 7181650, at *1. On the present record, he has failed to carry it.

Although it is true that Beza has by now served a lengthy sentence and that the Section 3553(a) factors related to respect for the law and avoiding unwarranted disparity weigh in favor of his release, the Court is ultimately unpersuaded that reducing his sentence "protect[s] the public from further crimes" or "assure[s] . . . the safety of any other person and the community." 18 U.S.C.

§ 3553(a)(2)(C); 3142(g). Beza's recent BOP disciplinary record gives the Court the most pause. (Docket Nos. 180 at 14-16, 180-1). The record reflects repeated disciplinary issues, commencing from early in Beza's sentence and continuing nearly to the time of briefing. Id. In particular, the Court is troubled by Beza's very recent history of infractions, including three separate citations for refusing work from the two months prior to the filing of the *Motion* in August 2025. (Docket No. 180-1 at 1). Moreover, Beza's disciplinary files contain evidence of a violent infraction in the form of an August 2024 fight with another inmate. Id. at 2. Supplementing this already concerning corpus are the numerous additional citations that litter his record, such as: refusal of substance use screenings, presence in an unauthorized area, substance use, stealing, and multiple instances of phone account misconduct. Id. at 1-7. Although Beza briefly attempts to justify some of these infractions, the Court gives great weight to his recent and repeated refusals to comply with institutional rules and authority, coupled with the recent violent disciplinary incident. Collectively, these infractions prevent the Court from confidently concluding that Beza no longer presents a risk of noncompliance or danger outside the jail cell. On balance, the Court cannot conclude that Beza has carried his burden of showing that he no longer poses a danger to the community or that the need

Criminal No. 09-334-3(RAM)                                              14

to protect the public would be fully satisfied were he to be released at his current stage of rehabilitation. If Beza returns to the Court with a cleaner disciplinary record in the future, an alternative determination on this factor remains possible.

Lastly, the nature, circumstances, and seriousness of Beza's offense cannot be minimized. Beza acknowledged his involvement in a serious maritime conspiracy involving the attempted importation of large quantities of heroin into Puerto Rico. (Docket Nos. 92, 93, 94). Hence, this Section 3553(a) factor also weighs against his release.

## IV.   CONCLUSION

Considering newly minted Supreme Court precedent, and because Section 3142(g) and Section 3553(a) independently weigh against reducing Beza's sentence, his *Motion* at Docket No. 168 is **DENIED**.

In San Juan, Puerto Rico, this 28th day of May 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge